# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,     )<br>    )<br>                Plaintiff,    )<br>    )<br>    vs.                    )<br>    )<br>DONNIE BRYANT,         )<br>    )<br>            Defendant.    )<br>    ) | Case No.: 2:06-cr-00234-GMN-GWF-1<br><br>**ORDER DENYING MOTION FOR<br>SENTENCE REDUCTION** |

Pending before the Court is Defendant Donnie Bryant's Renewed Motion for Sentence Reduction ("MSR") under 18 U.S.C. § 3582(c)(1)(A)(i), (ECF No. 877). The Government filed a Response, (ECF No. 883), to which Defendant filed a Reply, (ECF No. 884).

For the reasons discussed below, the Court **DENIES** Defendant's Motion for Sentence Reduction because he has not met his burden of showing extraordinary and compelling reasons warranting such a reduction or that the 18 U.S.C. § 3553(a) factors favor a reduction.

## I.   <u>BACKGROUND</u>

The Court incorporates the background and procedural history of this case from its Order Granting in Part and Denying in Part Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Order 1:15–4:5, ECF No. 838). In short, in 2008, Defendant was convicted on several counts of Violent Crimes in Aid of Racketeering Activity ("VICAR") in violation of 18 U.S.C. § 1959 and Use of a Firearm During a Crime of Violence in violation of 18 U.S.C. § 924(c) for acts he committed when he was 16. (J., ECF No. 18). Defendant was initially sentenced to life imprisonment for the VICAR murder counts, plus an additional 50 years for his firearm offenses. (*Id.*). Defendant's judgment of conviction has been amended several times following his sentence. (First Am. J., ECF No. 617); (Second Am. J.,

ECF No. 694); (Third Am. J., ECF No. 828); (Fourth Am. J., ECF No. 840). Defendant is now sentenced to 70 years imprisonment for his VICAR murder counts and firearm offenses. (*See generally* Fourth Am. J.). Defendant filed his First MSR, (ECF No. 849), which the Court denied without prejudice. (Order, ECF No. 865). The Court gave Defendant leave to file another motion for sentence reduction which remedied the deficiencies identified in its Order. (*Id.*). Defendant then filed the instant Renewed MSR, (ECF No. 877).

## II.   LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), a court may, in certain circumstances, grant a defendant's motion to modify his or her term of imprisonment. Before filing such a motion, the defendant must first petition the Bureau of Prisons ("BOP") for compassionate release. *Id.* A court may grant the defendant's motion for a modification in sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or after thirty (30) days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C.] section 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* As the movant, the defendant bears the burden to establish that he is eligible for compassionate release. *See United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022) (explaining it is the "[defendant's] burden to establish his eligibility for compassionate release").

The Sentencing Commission has recently passed guidance as to when "extraordinary and compelling reasons" exist for compassionate release. U.S.S.G. § 1B1.13(b). Such circumstances include, among others: (1) the medical circumstances of the defendant, (2) the

advanced age of the defendant resulting in "a serious deterioration in physical or mental health," (3)"[t]he death or incapacitation of the caregiver of the defendant's minor child," (4) the defendant, while in custody was the victim of sexual or physical abuse, or (5) "other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." *Id.*

## III.   **DISCUSSION**

The Government does not dispute that Defendant has exhausted his administrative remedies. (*See generally* Resp., ECF No. 877).  As such, the Court turns to whether Defendant has shown extraordinary and compelling reasons warranting a sentence reduction.  Here, Defendant argues that a sentence reduction is warranted because: (1) there is a sentencing disparity between the sentence he received and the sentence he would likely receive under present sentencing law; (2) there is an impermissible sentencing disparity between his sentence and that of his codefendant Johnathon Toliver, especially when considering Defendant's juvenile status at the time of his offense; and (3) he received ineffective assistance of counsel.[1] (*See* Renewed MSR).  The Court examines each reason in turn.

///

///

///

---

[1] Defendant also requests that the Court recalculate his criminal history score to remove two points that he contends were improperly added under U.S.S.G. § 4A1.1(d). (Renewed MSR 16:3–7).  U.S.S.G. § 4A1.1(d) provides that two points should be added to the defendant's criminal history score "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  It is true that Defendant committed the instant offense while under supervised release for his 2004 conviction of Violent Crimes in Aid of Racketeering Activity (Murder and Conspiracy to Commit Murder). (ECF No. 878-1, SEALED PSR ¶ 85).  However, in calculating Defendant's criminal history score, his PSR did not add any criminal history points for committing this offense while under supervised release. (*See generally* PSR ¶ 87).  Instead, Defendant was assigned four criminal history points for three prior convictions. (*Id.*).  Accordingly, the Court declines to recalculate his criminal history score.

1

**A.  Sentencing Disparity Following Passage of the First Step Act ("FSA")**

2     First, Defendant argues that a sentence reduction is warranted because his sentence was

3 impermissibly "stacked" as to his convictions under 18 U.S.C. § 924(c). (Renewed MSR 8:18–

4 13:7).  The Government counters Defendant's sentence was not stacked, as each of his § 924(c)

5 convictions received only a ten-year mandatory minimum sentence under § 924(c)(1)(A)(iii)

6 because he discharged a firearm during the commission of a crime of violence. (Resp. 4:3–24).

7     Prior to the FSA, prosecutors were permitted to "stack" multiple counts of § 924(c)

8 firearm violations, which resulted in defendants without previous convictions being charged for

9 both a first offense—carrying a five-year mandatory minimum—and a "second or subsequent

10 offense" —carrying a mandatory 20 or 25-year sentence, to be served consecutively—in the

11 same indictment. *United States v. Jones*, 482 F. Supp. 3d 969, 978 (N.D. Cal. 2020) (citing

12 *Deal v. United States*, 508 U.S. 129, 132 (1993)).  Thus, someone convicted of two § 924(c)

13 counts in a single offense automatically faced a minimum sentence of 25 to 30 years.

14     In 2018, Congress enacted the FSA.  Section 403(a) of the FSA revised § 924(c) by

15 eliminating the 25-year stacking provision for a "second or subsequent count of conviction"

16 under § 924(c).  Now, the 25-year mandatory-minimum sentence applies for a second § 924(c)

17 conviction only if the defendant has a prior § 924(c) conviction that has become final.

18     The FSA's amendments to "stacking" do not impact Defendant's sentence because he is

19 not serving a "stacked" sentence.  Defendant "was not convicted of violating § 924(c) once in

20 three different ways, but of violating § 924(c) three times." *United States v. Charley*, 417 Fed.

21 App'x 627, 629 (9th Cir. 2011).  Specifically, Defendant's convictions include three separate

22 violations of § 924(c)(1)(A)(iii) for discharging a firearm against three separate individuals.

23 (PSR at 2).  Each of the three violation were treated as a first offense, not a second or third

24 offense, and the mandatory sentence for a first offense is a "term of imprisonment of not less

25 than 10 years." 18 U.S.C. § 924(c)(1)(A)(iii).  Thus, if the Court sentenced Defendant on the

same charges today, it would have no choice but to impose the same three ten-year terms, all consecutive to each other. *See* 18 U.S.C. § 924(c)(1)(D) (requiring the imposition of consecutive sentences). The Court recognizes the severity of Defendant's sentence, however its length is "largely driven not by outdated stacking laws, but by the plain language of [§] 924(c)." *United States v. Castillo*, No. 03-cr-979, 2021 WL 268638, at *4 (S.D.N.Y. Jan. 27, 2021). The statute requires today—as it did when Defendant was resentenced—a ten-year mandatory minimum on each of the charges. Accordingly, Defendant has not shown he is eligible for a sentence reduction on this basis. *See Wright*, 46 F.4th at 951.

## B. Impermissible Sentencing Disparity Between Codefendants and Defendant's Juvenile Status

Second, Defendant argues a sentence reduction is warranted because his sentence is double that of his-codefendant Johnathon Toliver. (Renewed MSR 13:8–15:23). Specifically, Toliver was re-sentenced in 2018 to 420 months, or 35 years of imprisonment as opposed to Defendant's 70-year sentence. (*Id.*). Defendant contends that this disparity is especially unwarranted because he was juvenile at the time of his offense, while Toliver was an adult. (*Id.*).

At the outset, Defendant's arguments blur his juvenile status contention with the contention that a sentence reduction is warranted because of the sentencing disparity between him and Toliver. In the Court's view, these are two separate issues. The Court begins by examining whether the sentencing disparity between Defendant and Toliver warrants a reduction in Defendant's sentence.

### 1. Sentencing Disparity Between Defendant and Toliver

Defendant contends that the sentencing disparity exists between him and Toliver warrants a sentence reduction because "Toliver was convicted in the same jury trial" but "has half the sentence of [Defendant] . . . ." (Reply 5:3–5, ECF No. 884).

1    Like Defendant, Toliver was convicted on several counts of VICAR in violation of 18

2  U.S.C. § 1959 and Use of a Firearm During a Crime of Violence in violation of 18 U.S.C.

3  § 924(c) and sentenced to life imprisonment plus an additional 90 years in July 2008. (J., ECF

4  No. 560 in *United States v. Bryant et al.*, No. 2:06-cr-00234-RHW-GWF-2).  However, in

5  2018, Toliver was resentenced based on a plea agreement he entered with the Government in

6  which he pled guilty to one count of Use of a Firearm During and In Relation to a Crime of

7  Violence in violation of 18 U.S.C. § 925(j)(1). (Plea Agreement, ECF No. 812 in *United States*

8  *v. Bryant et al.*, No. 2:06-cr-00234-RHW-GWF-2).  Thus, Toliver's judgment of conviction

9  and corresponding sentence is materially different than Defendant's because it does not include

10  a VICAR murder count, nor does it include as many counts for the related firearm offenses.

11  (*Compare* Second Am. J., ECF No. 820 in *United States v. Bryant et al.*, No. 2:06-cr-00234-

12  RHW-GWF-2 *with* Fourth Am. J, ECF No. 840 in *United States v. Bryant et al.*, No. 2:06-cr-

13  00234-RHW-GWF-1).  And the Ninth Circuit has made clear that acceptance of a guilty plea is

14  a permissible explanation for a sentencing disparity. *See, e.g., United States v. Valdez-Lopez*, 4

15  F. 4th 886, 893 (9th Cir. 2021) ("Valdez-Lopez's codefendants had received shorter sentences

16  after pleading guilty, and a codefendant's acceptance of a guilty plea is a permissible

17  explanation for a sentencing disparity.")

18    Defendant's argument rests on the proposition that a sentence reduction is warranted

19  merely because of the difference in length between his and Toliver's sentence.  Defendant's

20  contention is misplaced because at least some disparity is attributable to Toliver's plea

21  agreement, and there is nothing extraordinary or compelling about a consequence of a

22  bargained-for-plea agreement. *See United States v. Burleson*, No. 2:16-cr-00046, 2022 WL

23  17343788, at *8 (D. Nev. Nov. 29, 2022) (rejecting the defendant's sentencing disparity

24  argument where "[a]ny sentencing disparity between [d]efendant and his codefendants is a

25  ///

consequence of bargained-for-plea agreements").  Accordingly, Defendant has not shown he is eligible for a sentence reduction on this basis. *See Wright*, 46 F.4th at 951.

### 2. Juvenile Status

Defendant next argues that the sentencing disparity between him and Toliver warrants a reduction because he was a juvenile at the time of the offense and Toliver was not a juvenile. (Reply 5:4–6).  For the reasons discussed above, the disparity between Defendant and Toliver does not warrant a sentence reduction because in Toliver's plea agreement, the Government dismissed the VICAR murder count and several counts for the related firearm offenses. Nevertheless, Defendant's juvenile status at the time the offense was committed may be an independent justification for a sentence reduction that warrants further inquiry.

Accordingly, the Court examines whether Defendant's age at sentencing can constitute an extraordinary and compelling reason warranting a sentence reduction.  If it can, the Court then determines whether it does in this case.

### a.  Youth as an Extraordinary and Compelling Reason

The Ninth Circuit has not directly addressed this issue.  Courts outside the Ninth Circuit are divided whether a defendant's youth constitutes an extraordinary and compelling circumstance warranting a sentence reduction.  The diverging outcomes reached by courts are based on two lines of reasoning.  The first considers that facts known at sentencing, including age, cannot be used to support a motion under § 3582. *See, e.g., United States v. Jackson*, No. 06-cr-20411, 2023 WL 5321073, at *3–4 (E.D. Mich. Aug. 17, 2023) (relying on the Sixth Circuit's decision in *United States v Hunter*, 12 F.4th 555 (6th Cir. 2021)); *United States v. Susinka*, No. 03-CR-90-16, 2023 WL 2402914, at *7 (N.D. Ill. Mar. 8, 2023) (relying on the Seventh Circuit's decision in *United States v. Wrice*, 2021 7209619, at *1 (7th Cir. 2021)); *see also United States v. Augustin*, 2021 WL 6059564, at *1 (3d Cir. Dec. 20, 2021).  The aim of this approach is prioritizing finality and consistency. *See McLeskey v. Zant*, 499 U.S. 467, 492

1    (1991) ("A procedural system which permits an endless repetition of inquiry into facts and law

2    in a vain search for ultimate certitude" is a system that "no longer reflects humane concern but

3    merely anxiety and a desire for immobility.") (citation omitted).  Facts must be assigned

4    finality because "there will always be a new academic article a defendant can marshal to

5    recharacterize their background and the facts of the offense, and there is no limit on the number

6    of successive motions a defendant can file under § 3582(c)(1)(A)." *Hunter*, 12 F.4th at 571.

7    Thus, if facts are perpetually reconsidered as time progresses (or a new judge is assigned as in

8    this case), no sentence is truly final.  Applying this reasoning, the age of an offender at the time

9    of the offense is an immutable fact that is to be considered only by the sentencing judge. *See*

10   *United States v. Rimpson*, No. 20-3467, 2021 WL 6098440, at *1 (7th Cir. Sept. 22, 2021)

11   ("The district judge knew their ages when it imposed the sentences initially, and so that fact

12   provides no reason—let alone an extraordinary and compelling one—to reduce those sentences

13   now.").

14          The second approach is holistic.  It considers how Supreme Court precedent has changed

15   regarding juvenile offenders, how science has developed, the applicable Sentencing Guidelines,

16   and the facts underlying the defendant's conviction. *See, e.g., United States v. Lara*, 658 F.

17   Supp. 3d 22 (D. R.I. 2023); *United States v. Golding*, No. 05-cr-538, 2022 WL 2985014, at *2–

18   3 (S.D.N.Y. July 27, 2022); *United States v. Ramsay*, 538 F. Supp. 3d 407, 410 (S.D.N.Y.

19   2021); *United States v. Espino*, 03-cr-20051, 2022 WL 4465096 (D. Kan. Sept. 26, 2022).

20   "These cases draw on recent developments in neuroscience, psychology, and sociology, which

21   demonstrate why standard penological goals apply with much less force to younger defendants

22   in light of their immaturity, susceptibility to peer and other influences, salvageability, and

23   dependence on family and other features of their environment that lie beyond their control."

24   *Golding*, 2022 WL 2985014, at *2.  Deference should be given to facts considered at

25   sentencing, but not blind or absolute deference.  This is because judges are often tasked with

evaluating nuanced issues which later require re-examination.  For example, the Court is not tasked with considering Defendant's age at the time of sentencing—a straightforward issue that was done by the sentencing judge—but rather to consider "the fact of his age in the context of the subsequent growth in understanding the differences between the brains of adolescents and emerging adults." *United States v. Clary*, No. 1:96-cr-587, 2022 WL 173243434, at *9 (D.N.J. Nov. 29, 2022).

Although neither approach is perfect,[2] the Court finds the reasoning of the second approach to be more persuasive, for two reasons.  First, when a defendant does not meet the criteria for a sentence reduction based on his medical condition, advanced age, or family circumstance, the Court can still conclude that extraordinary and compelling reasons warrant a reduction in his sentence under U.S.S.G § 1B1.13(b)(5) for "other" reasons that are "similar in gravity to those described in [§ 1B1.13(b)(1) through (4)]."  The Sentencing Commission's policy statement provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing . . . to warrant a reduction in the term of imprisonment. Therefore, the fact that a[] . . . reason could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement."  Thus, the Sentencing Guidelines make clear that a sentence reduction can be based on facts that were known at sentencing.

Second, and related to the first, there has been a marked development in Supreme Court jurisprudence surrounding a defendant's age in sentencing.  The Supreme Court has recently emphasized that "youth matters in sentencing." *See Jones v. Mississippi*, 593 U.S. 98, 105

---

[2] The first approach is rigid, as it does not account for intervening changes in law and science.  However, its rigidity can also be categorized as a strength.  Specifically, the second approach can lead to inconsistent outcomes as judges may view a defendant's youth as it relates to law and fact differently in deciding whether a sentence reduction is warranted.  In practice, the first approach promotes uniform outcomes because facts are assigned finality at sentencing.  The second approach's strength comes from its flexibility as it accounts for society's evolving standards of how certain facts are or should be perceived when guided by Supreme Court precedent and the Sentencing Guidelines.

(2021).  It previously explained that "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences of juvenile offenders, even when they commit terrible crimes." *Miller v. Alabama*, 567 U.S. 460, 472 (2012).  In recent years, the Supreme Court and lower courts have relied on scientific development regarding youth and brain development to "better understand the neurological differences in young brains that can drive youthful crimes." *United States v. Johnson*, No. 05-CR-00167, 2021 WL 5037679, at *2 (N.D. Cal. Oct. 30, 2021).

Taken together, youth matters at sentencing, and a court is not precluded from finding extraordinary and compelling reasons exist based on facts known at sentencing.  Accordingly, the Court finds that an offender's juvenile status can be an extraordinary and compelling reason warranting a sentence reduction.  But simply because youth *can* be a reason for a sentence reduction does not mean it *always* warrants one.  So, the Court now examines the appropriate framework for determining whether this Defendant's juvenile status constitutes an extraordinary and compelling reason in this case.

> b.  *Whether Defendant's Age Constitutes an Extraordinary and Compelling Reason Warranting a Sentence Reduction*

The seminal case on age as an extraordinary and compelling reason comes from the Southern District of New York in *Ramsay*.  There, the court identified attributes of youth that merit consideration: immaturity, salvageability, dependence, and susceptibility. *Ramsay*, 538 F. Supp. at 417–23.  Accordingly, the Court begins with considering Defendant's immaturity.

> 1.  Immaturity

The Court finds that this factor does not militate in favor of a reduction because Defendant's offense did not involve a high-pressure, time-sensitive context.  Instead, Defendant's offense resulted from a pre-meditated plan to ambush and kill a rival gang member.

The *Ramsay* court relied on peer-reviewed studies in concluding that "in high-pressure, time-sensitive, emotional context ('hot recognition'), adolescents tend to make riskier decisions. Thus, when sentencing adolescent offenders—particularly when the offense occurred quickly in a high-paced, emotional environment, courts should bear in mind the adolescent 'maturity gap.'" *Ramsay*, 538 F. Supp. 3d at 419–20 (quoting Grace Icenogle et al., *Adolescents' Cognitive Capacity Reaches Adult Levels Prior to Their Psychosocial Maturity: Evidence for a 'Maturity Gap' in a Multinational, Cross-Sectional Sample*, 43 LAW & HUM. BEHAV. 19 (2019)).

Unlike the defendant in *Ramsay*, the Defendant in this case did not commit his offenses in a high-pressure, time-sensitive context. Defendant, Toliver, and another individual named Charles Richard formed a gang called Squad Up in the early 2000s. (PSR ¶ 12). Richard was involved in an incident with a rival drug dealer named Jabirey Carter, resulting in Squad Up members planning to ambush and kill Carter. (*Id.* ¶ 13). The plan entailed Defendant shooting at Carter and his companions in an area they congregated in, leading them to run down an alley where Toliver and a third member of Squad Up "would be waiting in ambush." (*Id.*). In executing the plan, Defendant, who at this time was on supervised release for his conviction of Violent Crimes in Aid of Racketeering Activity (Murder and Conspiracy to Commit Murder),[3] left home without permission to confront Carter. (*Id.* ¶¶ 13–15). Defendant fired three shots at Carter and his four companions, while Toliver and Richard fired 11 total. (*Id.*). One of Carter's companions, Gilbert Henry, was killed, and a civilian, Trista Johnson, was struck in her right hand by a bullet. (*Id.*). When fleeing the scene, Defendant pointed his firearm at a security officer during a standoff before running away. (*Id.*).

---

[3] That prior murder conviction, another gang-related shoot-out, involved shooting at the occupants of a car driven by rival gang members during a high-speed chase resulting in the death of another individual. (PSR ¶¶ 14, 85).

1       Defendant's offense was not a spontaneous occurrence.  It was a pre-meditated

2 calculated ambush. *See United States v. Siraj*, No. 05-CR-104 (NG), 2023 WL 2569398, at *3

3 (E.D.N.Y. Mar. 20, 2023) (determining the defendant's adolescence did not support

4 compassionate release because his offense "involved weeks of planning" and was therefore

5 distinguishable from the "high-pressure, time-sensitive' contexts in which courts have found

6 that adolescents tend to make riskier decisions") (quoting *Ramsay*, 538 F. Supp. 3d at 420).

7 This factor weighs against a sentence reduction.

8                           2.   Salvageability

9       Salvageability weighs against a sentence reduction because Defendant has not met his

10 burden of showing his rehabilitation efforts while in prison.

11       Salvageability relates to "the chance that [a defendant's] youthful 'character deficiencies

12 will be reformed.'" *Ramsay*, 538 F. Supp. At 422 (quoting *Graham v. Florida*, 560 U.S.

13 48, 68 (2010).  The Supreme Court has noted that a "broad difference [between juveniles

14 and adults] is that the character of a juvenile is not as well formed as that of an adult.

15 The personality traits of juveniles are more transitory, less fixed." *Roper v. Simmons*, 543 U.S.

16 551, 570 (2005).  This "struggle to define their identity" decreases the likelihood "that even

17 a heinous crime committed by a juvenile is evidence of irretrievably depraved character." *Id.*

18 In *Ramsay*, the court noted that the defendant had not "merely become a model inmate; he

19 ha[d] become an exemplary family member, friend, student, and employee." *Ramsay*, 538 F.

20 Supp. 3d at 425.  Thus, this factor "relates to [a defendant's] rehabilitation efforts[.]" *United*

21 *States v. Hope*, No. 1:97-cr-105, 2023 WL 11109249, at *8 (E.D. Tex. Aug. 23, 2023)

22 (discussing *Ramsay*).

23       Neither Defendant's First Motion for Sentence Reduction nor his Renewed Motion for

24 ///

25 ///

Sentence Reduction includes exhibits demonstrating his rehabilitation.[4] (*See generally* First MSR); (Renewed MSR). For example, his Motions do not include coursework completed by Defendant, whether he has a clean disciplinary record, or if he has spent any time volunteering at his facility. *See United States v. Kayrath*, No. 94-cr-10128, 2024 WL 914059, at *6 (D. Kan. Mar. 4, 2024) ("Although Defendant was in custody with a life sentence, he has had a clean disciplinary record for the past ten years and has spent a significant amount of time volunteering and giving to the [prison] community."). It is true that "[a]t the very crux of compassionate release is the recognition that no man is beyond redemption." *United States v. Snype*, No. 02-cr-939, 2023 WL 4622870, at *12 (S.D.N.Y. July 19, 2023) (Chin, J. sitting by designation) (cleaned up). But it remains a defendant's burden to show that they are taking affirmative steps towards redemption by rehabilitating. *Wright*, 46 F.4th at 951. Defendant has not done so here. Accordingly, this factor weighs against a sentence reduction.

### 3. Dependence

The dependence factor weighs slightly in favor of a reduction. Specifically, while Defendant's mother strove to provide Defendant with a stable home, his community was plagued by gang involvement, and as a juvenile, Defendant lacked the freedom adults have to extricate himself from this setting.

"[A]dolescent offenders are less culpable because they have been dependent on others for most or all of their lives. Therefore, relative to adults' crimes, adolescents' crimes are less a product of their choices and more a product of their environment." *Ramsay*, 538 F. Supp. at 422 (quoting *Roper*, 543 U.S. at 569). As the Supreme Court has explained, "juveniles

---

[4] Defendant's PSR states that "since beginning his incarceration, he has completed anger management, interpersonal skills, grief and loss, victim impact, a writing class, and a cinema class" in addition to "participat[ing] as a softball and basketball official." (PSR ¶ 97). However, this PSR is now over a decade old, and the Court has not received evidence demonstrating Defendant's continued commitment towards his rehabilitation over this time.

1   have less control, or less experience with control, over their own environment.  '[A]s legal

2   minors, [juveniles] lack the freedom that adults have to extricate themselves from a

3   criminogenic setting.'" *Roper*, 543 U.S. at 569 (internal citations omitted).

4         Defendant's PSR states that "[c]onsideration is given for [his] youthful status, an absent

5   father who has been incarcerated for Attempt[ed] Murder, and [his neighborhood] being located

6   in a gang-infested community." (PSR ¶ 130).  According to Defendant's mother, he "shared

7   with her that he thought everyone was a member of a street gang." (*Id.* ¶ 95).  She explained

8   that she was unsuccessful in her attempts to deter Defendant from associating with gang

9   members because "he was surrounded by adult Rolling 60s Crip gang members." (*Id.* ¶ 93).

10  Despite Defendant's surroundings, his mother tried "to be a positive influence in [his] and []

11  surrounded him with a 'church family.'" (*Id.* ¶ 95).  His mother commented that "many of the

12  other gang members told [him] that he did not need to be in a street gang, because he had a

13  good home life." (*Id.*).

14        "[Defendant's] gang involvement and absent father suggest he was highly dependent on

15  others as a juvenile, and this dependence landed on role models who encouraged and

16  participated in [] criminal behavior." *Hope*, 2023 WL 11109249, at *8.  However, Defendant's

17  surroundings are marginally counterbalanced by the fact that his mother appeared to create a

18  positive home life for him.  He made a choice to ignore his mother's attempts to avoid gang

19  activity.  Accordingly, this factor weighs slightly in favor of a sentence reduction.

20                    4.   Susceptibility to Peer Pressure

21        For the same reasons as discussed in the preceding section, the Court finds that

22  Defendant's susceptibility to peer pressure weighs slightly in favor of a reduction.

23        The Supreme Court has noted that an "area of difference [between juveniles and adults[]

24  is that juveniles are more vulnerable or susceptible to negative influences and outside pressures,

25  including peer pressure." *Roper*, 543 U.S. at 569.  "'One of the hallmarks of adolescent risk

taking is that it is much more likely than that of adults to occur in the presence of peers, as evidenced in studies of reckless driving, substance abuse, and crime.'" *Ramsay*, 538 F. Supp. at 420 (citation omitted).

"Defendant committed most, if not all, of his crimes with others, all of which demonstrate that [he] was susceptible to negative influences at the time of his crime due, in part, to his young age." *Hope*, 2023 WL 11109249, at *7. Moreover, the sentencing judge remarked that "[he did not] doubt that older people had an influence on [Defendant]." (Sentencing Tr. 25:17–18, Ex. B to Renewed MSR, ECF No. 877-1). Nevertheless, the Court finds that Defendant's positive home life indicates he was not as vulnerable to its influence because of fractured family circumstances. Defendant made a choice as to which people he wanted to associate with. Accordingly, this factor weighs slightly in favor of a sentence reduction.

### 5.  Extent to Which the Sentencing Judge Considered Defendant's Age

In addition to the four factors identified in *Ramsay*, courts should also consider the extent to which a defendant's youth was considered at sentencing. Applying this factor, the Court finds that Defendant's youth is a less salient fact. Specifically, the sentencing judge was aware of Defendant's age and crafted a relatively lenient sentence considering Defendant's conduct, likely because of his age.

"When a court considers a defendant's youth in the initial sentencing, that factor may be less salient in a subsequent assessment of extraordinary and compelling circumstances." *United States v. Jones*, No. 19-cr-125, 2023 WL 2929299, at *3 (S.D.N.Y. Apr. 13, 2023). For example, if a court issued a sentence on the low end of the guideline range or gave a downward variance in recognition of the defendant's age, youth would be a less salient reason in a subsequent assessment of extraordinary and compelling circumstances. *See, e.g., United States v. Chambliss*, No. 09-CR-274, 2022 WL 4110246, at *1 (S.D.N.Y. Sept. 7, 2022) (placing less

emphasis on a defendant's youth when the court "was aware of Defendant's youth and upbringing at the time of sentencing and took them into account in imposing a below-Guidelines sentence").  And here, where the undersigned is not the judge who sentenced Defendant, it ensures that the appropriate weight is given to the findings and conclusions of the sentencing judge.

First, the sentencing judge was aware of Defendant's age when he was sentenced. The parties' sentencing memorandums discussed his youth and juvenile status, as did his PSR. (Def. Sentencing Mem. 3:10–13, ECF No. 691); (Gov. Sentencing Mem. 3:17–20, ECF No. 674); (PSR ¶ 130).  Moreover, Defendant's counsel explicitly argued at sentencing that the sentencing judge should take account of his age and upbringing in imposing his sentence. (Sentencing Tr. 11:4–17:0, Ex. B to Renewed MSR).

Second, the sentencing judge refrained from giving Defendant a more severe sentence likely because of his age.  The Government's sentencing memorandum advanced that life imprisonment was appropriate on Defendant's VICAR murder count *despite* his juvenile status. (Gov. Sentencing Mem. 3:18–4:20).  The sentencing judge rejected this proposal, instead adopting the Probation Office's recommendation of 40 years. (Sentencing Tr. 28:19–25, Ex. B to Renewed MSR).  Moreover, the sentencing judge gave Defendant the mandatory minimum of ten years on each of his § 924(c) charges. (*Id.* 29:1–15); *see* 18 U.S.C. § 924(c)(1)(A)(iii) (authorizing a "term of imprisonment of *not less* than 10 years") (emphasis added).

The Court recognizes that 70 years is a long sentence.  But the sentencing judge was within his authority to issue an even longer sentence considering Defendant's conduct.  In sum, the Court finds that Defendant's youth is a less salient fact because it was considered by the sentencing judge and was likely the driving force behind Defendant receiving a shorter sentence.

///

6.   <u>Totality of the Circumstances</u>

The Court finds a sentence reduction is not warranted based on Defendant's juvenile status at the time of the offense.  Defendant's offense was not the result of a spur of the moment, split-second decision.  He, along with his companions, *planned* to ambush and execute Carter, a rival gang member.  The result: Henry was killed instead, Johnson was injured, and civilians were endangered.  This offense occurred when Defendant was on supervised release for crimes that resulted in the death of *another* individual.  Even accounting for the fact that Defendant grew up in a neighborhood plagued by gang membership, the Court cannot discount the severity of his actions.  This is especially true when Defendant's mother strove to provide him with a positive home environment—a fact noted by other gang members in questioning why Defendant joined a gang.  Finally, it bears repeating that the sentencing judge likely gave Defendant a more lenient sentence because of his juvenile status.  This is not a case where the undersigned is the first to consider Defendant's age.  Accordingly, the Court finds that Defendant's juvenile status at the time of his offense does not present extraordinary and compelling reasons warranting a sentence reduction.

**C.  Ineffective Assistance of Counsel**

Defendant also argues a sentence reduction is warranted because his counsel was ineffective "in his 2004" case which resulted in his co-defendants receiving more favorable sentences. (Renewed MSR 15:13–16:7).  However, "a motion for [sentence reduction] is not an appropriate vehicle for a collateral attack against a defendant's sentence." *United States v. Carlos-Tofolla*, No. 1:17-cr-00343, 2023 WL 3484163, at *2 (D. Idaho May 16, 2023).

The "exclusive method of collaterally attacking a federal conviction or sentence" is 28 U.S.C. § 2255, precluding a defendant "from the use of another mechanism, such as [sentence reduction] or compassionate release, to sidestep § 2255's requirements." *United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022).  Multiple circuits have held that a collateral attack

cognizable under § 2255 cannot properly be framed as a motion for sentence reduction under § 3582(c)(1). *See, e.g., United States v. Escajeda*, 58 F.4th 184, 187–88 (5th Cir. 2023); *United States v. McCall*, 56 F.4th 1048, 1058 (6th Cir. 2022); *Ferguson*, 55 F.4th 270.

The Court agrees with these circuits. "[A]lthough a § 3582 motion is a continuation of a prior criminal proceeding, the relief it offers is limited to the narrow sentencing issues prescribed in the statute itself." *United States v. Chavira-Nunez*, 689 Fed. App'x 896, 899 (10th Cir. 2017). "[I]t cannot be used to create a new vehicle for a collateral attack on a conviction," such as an ineffective assistance of counsel challenge. *United States v. Verners*, 136 Fed. App'x 142, 145 (10th Cir. 2005). Accordingly, the Court DENIES Defendant's ineffective assistance of counsel challenge.

### D. 18 U.S.C. § 3553(a) Factors

In sum, Defendant has not met his burden to show that "extraordinary and compelling reasons" warrant a reduction in his sentence. Because the Court does not find these reasons to exist, it need not address the § 3553(a) factors. *See United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021). However, even if Defendant provided evidence demonstrating an extraordinary basis for compassionate release, the Court finds a reduction is not warranted pursuant to the 18 U.S.C. § 3553(a) factors.

These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities with similar records who

///

///

///

have been found guilty of similar conduct;[5] and (7) the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a)(1)–(7).

The Court has already described the nature and circumstances of Defendant's offense. The significance and severity of Defendant's offense need only be repeated in regard to its result: a life lost, another injured, and others endangered with the threat of death. *See United States v. Woodberry*, No. 2:18-cr-00049, 2022 WL 1803334, (W.D. Wash. June 1, 2022) (observing that the defendant's conduct "was extremely serious" where the defendant committed an armed robbery because the circumstances were "fraught with opportunity for the firearms to be discharged and included the risk of causing death"). The seriousness of Defendant's offense weighs against granting the relief he requested.

The Court further finds that two other sentencing factors—the need for the sentence imposed and the Sentencing Guidelines—do not encourage a sentence reduction. Despite this being the second murder conviction within three years[6], Defendant received a sentence on the lower end of what is permitted by the Sentencing Guidelines. Based on the severity of Defendant's crime, the Court finds that the sentence currently imposed is sufficient but not greater than necessary to promote respect for the law and deter criminal conduct. Accordingly, the § 3553(a) factors also weigh against a sentence reduction.

### E. Home Confinement

Finally, Defendant advances that the FSA requires the BOP to confine him within 500 miles of his home in Nevada and seeks an order recommending the BOP to transfer him to a facility within that radius. (Renewed MSR 16:9–17:8).

---

[5] For the reasons stated above, the Court finds that there is not an unwarranted sentencing disparity between Defendant and Toliver.

[6] On May 3, 2002, Defendant participated in the murder of Williams and on September 13, 2004, Defendant participated in the murder of Carter.

The FSA amended 18 U.S.C. § 3621(b) to provide that the BOP shall "place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence."  Notwithstanding this language, section 3621(b) still preserves the BOP's discretion to consider all pertinent factors in making placement decisions, including "bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns."

Accordingly, the Court lacks the authority to compel the BOP to transport Defendant to a particular facility.  Instead, it RECOMMENDS to the BOP that Defendant be housed in a facility as close to Nevada as possible to enable his family to visit him more often.

**IV.  <u>CONCLUSION</u>**

**IT IS HEREBY ORDERED** that Defendant's Motion for Sentence Reduction, (ECF No. 877), is **DENIED.**

**IT IS FURTHER ORDERED** that the Court **RECOMMENDS** that Defendant be transferred within 500 miles of his primary residence in North Las Vegas, Nevada.

**DATED** this __6__ day of May, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court